J-S12021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES WATSON | : | |
| | : | |
| Appellant | : | No. 1048 MDA 2022 |

Appeal from the PCRA Order Entered July 8, 2022
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000449-2001

BEFORE: KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.: **FILED: SEPTEMBER 6, 2023**

James Watson (Appellant), appeals *pro se* from the order entered in the Bradford County Court of Common Pleas, dismissing as untimely his third Post Conviction Relief Act[1] (PCRA) petition. We note Appellant was found guilty in 2002 of first-degree murder, conspiracy, kidnapping,[2] and related offenses. The underlying petition raised several claims of **Brady** violations,[3] including

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9545.

[2] 18 Pa.C.S. § 2502(a), 903(a), 2901, respectively.

[3] **Brady v. Maryland**, 373 U.S. 83 (1963). A **Brady** violation claim avers: the Commonwealth suppressed evidence, either willfully or inadvertently, that was favorable to the accused, either because it was exculpatory or impeaching, and prejudice ensued. **Commonwealth v. Natividad**, 200 A.3d 11, 25-26 (Pa. 2019).

that the Commonwealth failed to provide: DNA test results, the audio recordings and transcripts of Appellant's police interview, as well as the police interviews of co-conspirators and defendants. We affirm.

We briefly summarize the underlying facts adduced at trial:

[On] April 17, 2001, an argument developed between Jason Ryans (Victim) and the Watson brothers (Kenny Watson and Appellant) at Kenny Watson's home in Wilkes-Barre, Pennsylvania. The Watsons believed [Victim stole] a handgun and a safe containing marijuana and money. . . . Kenny Watson punched [Victim]. In an ensuing struggle, Appellant grabbed a knife and inflicted multiple wounds to [Victim's] hands and arms. [Victim] was also punched and kicked repeatedly by the Watsons. The Watsons then bound the wrists of [Victim], either [to stop] his bleeding or to prevent his escape, or both. [Victim] was then placed in a vehicle and transported to a rural area near the Village of Camptown in Bradford County. There, [Victim] was taken from the vehicle and shot twice in the back of the head by Appellant. [Victim] apparently died immediately.

The evidence against Appellant and Kenny Watson diverged with respect to their criminal culpability following the altercation in Wilkes-Barre. After [Victim] was bound, the Watsons then informed others at the house that they would [take Victim] to a hospital, but would seek a rural hospital. The evidence revealed that Appellant was in fact simply looking for a secluded place to murder [Victim], but the evidence also suggested that Kenny Watson, among others, was duped into accompanying Appellant to Bradford County. . . .

*Commonwealth v. Watson*, 1884 MDA 2002 (unpub. memo. at 1-2) (Pa. Super. Aug. 20, 2004) (record citation and some punctuation omitted), *appeal denied*, 884 MAL 2004 (Pa. Apr. 18, 2005).

Appellant and his brother Kenny were jointly tried before a jury. On September 12, 2002, Appellant was found guilty of first-degree murder,

conspiracy, kidnapping,[4] and related offenses. We note the jury found Kenny not guilty of all charges of homicide and conspiracy to commit homicide.

The trial court imposed a sentence of life without parole for first-degree murder, as well an aggregate term of 46 to 92 years, to run consecutive to the life sentence.

Appellant appealed, and this Court affirmed the judgment of sentence on August 20, 2004. Our Supreme Court denied allowance of appeal on April 18, 2005. *Watson*, 1884 MDA 2002, *appeal denied*, 884 MAL 2004.

Appellant filed a timely first PCRA petition, and subsequently a second PCRA petition. Both were denied, and on appeal, this Court ultimately affirmed. *See Commonwealth v. Watson*, 202 MDA 2011 (unpub. memo.) (Pa. Super. Jun. 1, 2012) (affirming in part and remanding in part denial of first PCRA petition), *appeal denied*, 136 MAL 2013 (Pa. Jul. 31, 2013); *Commonwealth v. Watson*, 216 MDA 2015 (unpub. memo.) (Pa. Super. Jan. 15, 2016) (affirming denial of first PCRA petition after remand); *Commonwealth v. Watson*, 1332 MDA 2020 (unpub. memo.) (Pa. Super. Jan. 20, 2022) (affirming denial of second PCRA petition).[5]

---

[4] 18 Pa.C.S. §§ 903, 2901.

[5] Following this Court's affirmance of the denial of his second PCRA petition, Appellant filed a petition with our Supreme Court for leave to file a *nunc pro tunc* petition for allowance of appeal. This petition was denied on June 22, 2022. *Commonwealth v. Watson*, 33 MM 2022 (order) (Pa. June 22, 2022).

On May 6, 2022, Appellant filed the underlying *pro se* PCRA petition, as well as a "Motion for Leave of Court to Compel/Conduct PCRA Discovery and/or Motion for Sanctions for Violation of Duty to Disclose."[6]  Appellant alleged the investigating state troopers and/or the Commonwealth violated **Brady**, as well as the trial court's discovery orders, when they intentionally suppressed: (1) the audio recordings and transcripts of his police interviews, where his "confession to murder" was read aloud at trial; (2) the audio recordings and transcripts of the police interviews of "co-conspirators/defendants-turned-witnesses;" (3) "exculpatory scientific evidence," where there was partial or insufficient DNA and gun shot residue testing on a "ziploc bag found next to the murder weapon[, which contained 11] live rounds of ammunition [and a] pair of latex rubber gloves;" and (4) all the "promises made, understandings, [or] agreements" with respect to leniency given to co-conspirators and co-defendants.[7]  Appellant's Motion for Leave of Court to Compel/Conduct PCRA Discovery and/or Motion for Sanctions for Violation of Duty to Disclose (Motion for Discovery), 5/6/22, at 1-4, 8 (some punctuation omitted).  Appellant concluded he was unlawfully arrested, unfairly tried, and falsely convicted.

---

[6] Appellant also filed an 87-page memorandum of law.

[7] On appeal, Appellant avers his "nephew, Rodney [W]atson, was an alleged Co-conspirator-turned-key-Prosecution witness," and gave "false testimony . . . based upon self-serving quid pro quo . . . Consideration Agreements worked out behind the scenes[.]"  Appellant's Brief at 34-35.

- 4 -

*Id.* at 1. We note Appellant did not refer to the timeliness of his petition under the PCRA, but briefly argued: the above "governmental interference [was] the **sole** cause for all unjustifiable procedural defaults;"[8] and he and his prior counsel have exercised due diligence in attempting to retrieve "impeachment evidence." *Id.* at 6 (quotation marks omitted).

On June 7, 2022, the PCRA court issued Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing. The court reasoned Appellant's petition was untimely filed, and thus the court lacked jurisdiction to review it. Appellant filed *pro se* responses, but the court issued the underlying order, on July 8th, dismissing the petition.

Appellant filed a timely notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Appellant presents the following issues for our review:

A. Whether the Commonwealth violated [Appellant's] rights to due process of law under the [P]ennsylvania and United States Constitutions by subjecting [Appellant] to a known Miscarriage of Justice, through the suppression of exculpatory evidence, coupled with the intentional fabrication of inculpatory evidence, to

---

[8] On the pre-printed PCRA petition form, Appellant checked the box indicating he should be entitled to relief because of "[t]he improper obstruction by government officials **of [his] right of appeal** where a meritorious appealable issue existed and was properly preserved in the trial court." Appellant's Motion for Post Conviction Collateral Relief, 5/6/22, at 2 (emphasis added). This provision, however, specifically refers to interference with one's right of appeal, and Appellant did not present any argument relevant thereto. Indeed, we note this Court disposed of his direct appeal on the merits.

perpetrate a fraud on the Court & jury, in order to gain a known false conviction[?]

B. Whether Appellant's Petition was timely, because any delay was a product of the due process violation[?]

C. Whether Appellant's Petition was timely because it was based on facts demonstrating these violations that were unknown to Appellant right before the filing of his PCRA Petition on May 6, 2022, despite his exercise of due [diligence?]

Appellant's Brief at 1 (some punctuation omitted).

"In reviewing the denial of PCRA relief, we examine whether the PCRA court's determinations are supported by the record and are free of legal error." *Natividad*, 200 A.3d at 25.

The PCRA's time requirements are "jurisdictional, and a court may not ignore it and reach the merits of an untimely PCRA claim." *Commonwealth v. Stahl*, 292 A.3d 1130, 1134 (Pa. Super. 2023). A PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves" one of the enumerated exceptions. 42 Pa.C.S. § 9545(b)(1). Pertinently, the government-interference exception may provide relief where: "the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim[.]" 42 Pa.C.S. § 9545(b)(1)(i). "Any petition invoking an exception . . . shall be filed within one year of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

"It is well-settled a *Brady* violation may fall within the governmental interference exception." *Natividad*, 200 A.3d at 28. Nevertheless,

"[a]lthough a **Brady** violation may fall within the governmental interference exception, the petitioner must plead and prove the failure to previously raise the claim was the result of interference by government officials, and the information could not have been obtained earlier with the exercise of due diligence." **Commonwealth v. Abu-Jamal**, 941 A.2d 1263, 1268 (Pa. 2008) (citation omitted).

Previously, this Court determined that for PCRA purposes, Appellant's judgment of sentence became final on July 17, 2005 (at the expiration of time to file, on direct appeal, a *writ of certiorari* with the United States Supreme Court). **Watson**, 1332 MDA 2020 (unpub. memo. at 5). The general one-year deadline to file a PCRA petition thus fell on July 17, 2006. **See** 42 Pa.C.S. § 9545(b)(1). The instant petition, filed more than 15 years later, on May 6, 2022, was therefore patently untimely.

The PCRA court observed that in the underlying petition, Appellant "seemingly relies" on the governmental-interference exception. PCRA Ct. Op., 8/6/22 at 2. The court reasoned:

> Appellant indeed pleads that government official, to wit: police and prosecutors[ ] acted in violation of his rights, but the actions of which he complains all relate to his arrest and prosecution more than two decades ago.
>
> He does not plead that any government official interfered with his ability to pursue his present claims at any time post trial, on direct appeal, or in either his first or second PCRA petition, nor does his petition suggest that he learned of the alleged governmental interference within one year prior to the filing of his new petition. His petition therefore fails to meet the PCRA's requirement that an exception to the PCRA's jurisdictional time

bar must be pleaded within one year of the date the petitioner learns of the exception. 42 Pa.C.S.[ §] 9545(b)(2).

Appellant has not pleaded facts establishing an exception to the PCRA's one-year time limit. This court therefore lacked jurisdiction to consider his claims. . . .

*Id.* at 2-3.

Although Appellant objects to this reasoning, we agree with the PCRA court.[9] *See* Appellant's Brief at 73, *quoting* PCRA Ct. Op. at 2.

Appellant misconstrues the exception. While his petition complained that alleged misconduct by the investigating state troopers was the governmental interference, which in itself merited relief, a proper Subsection 9545(b)(1)(i) claim would be that **present** governmental officials prevented Appellant from bringing a PCRA claim — separate from the purported governmental interference by the police. *See* 42 Pa.C.S. § 9545(b)(1)(i) ("the failure to **raise the claim previously** was the result of interference by government officials"). Furthermore, as the PCRA court reasoned, Appellant failed to explain when he learned of his new, potential claim, nor how governmental officials interfered with his ability to bring it previously. *See* *id.*

_____

[9] Furthermore, we disagree with Appellant's summation that the PCRA court "openly agree[d] to appearances of government interference by way of Police [and] prosecutorial Misconduct from 'more than two decades ago.'" *See* Appellant's Brief at 73. Instead, the PCRA court was merely summarizing Appellant's position; it did not agree with or endorse it. *See* PCRA Ct. Op. at 2.

Appellant continues to advance these claims on appeal. He again avers it is the alleged pre-trial "fabrication of evidence," *Brady* violations, and improper DNA testing that amount to governmental interference, which in itself warrants relief. Appellant's Brief at 33, 64. *See also id.* at 59-60 (arguing Appellant's false arrest, illegal detainment, and wrongful convictions were based on the "intentional fabrication of false evidence [and] willful[ ] suppression of exculpatory evidence, by way of known 'government interference'").

Finally, we note that on appeal, Appellant refers to the newly discovered evidence exception. *See* Appellant's Brief at 72. As this exception was not pled before the PCRA court, any present reliance on it is waived for appellate review. *See* Pa.R.A.P. 302(a); *Commonwealth v. Bedell*, 954 A.2d 1209, 1216 (Pa. Super. 2008).

For the foregoing reasons, we find no error in the PCRA court's determination that the underlying PCRA petition was untimely filed. *See Natividad*, 200 A.3d at 25. We thus affirm the dismissal order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2023

- 9 -